## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                    :
                                         : CHAPTER 7
GLENN ALLEN HATCH,                       :
                                         :
                                         :
                    DEBTOR.              : BANKRUPTCY NO. 07-11453( SR)

JEFF HATCH,                              :
                                         :
                    PLAINTIFF,           :
         VS.                             :
                                         :
GLENN ALLEN HATCH,                       :
                                         :
                    DEFENDANT.           : ADVS. NO. 07-214

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

### Introduction

Defendant, Glenn Hatch ("Debtor") moves for partial summary judgment on the claims filed against him by Plaintiff, Jeffrey Hatch ("Plaintiff"), under Bankruptcy Code §§ 523(a)(2), 523(a)(4), 727(a)(4)(A) and 727(a)(5).  Upon consideration of the matter, summary judgment shall be granted as to Plaintiff's claims under 11 U.S.C. §§523(a)(2)(B) and 727(a)(5) but denied in all other respects.

### Background

#### *Procedural History*

On March 9, 2007, the defendant, Glenn Hatch ("Debtor"), filed a Voluntary

Petition for Relief under Chapter 7 of the Bankruptcy Code.[1]  Plaintiff filed a proof of
claim in Debtor's bankruptcy case listing an unsecured nonpriority claim of
$632,746.10.  Plaintiff subsequently amended the claim, reducing the amount thereof
to $394,990.00.

On June 15, 2007, Plaintiff commenced this adversary proceeding by filing a
complaint which he subsequently amended two times in response to motions by the
Debtor for a more definite statement.  Plaintiff's second amended complaint (the
"Complaint") contains three counts.  In Counts I and II, Plaintiff objects to a discharge
of Debtor's debt to him pursuant to 11 U.S.C. § 523(a)(4)(A) and 11 U.S.C. §
523(a)(2), respectively.  In Count III, Plaintiff objects to Debtor's discharge pursuant to
11 U.S.C. § 727(a)(4) and (a)(5).[2]  The allegations in the Complaint focus on Debtor's
actions vis-a-vis three real estate transactions involving property in: (i) Lower Hampton,
Pennsylvania (the "Creek Road Property"); (ii) Hulmeville, Pennsylvania (the "Playwicki
Property"); and (iii) Ship Bottom, New Jersey (the "Ship Bottom Property").

On April 20, 2009, Debtor filed his motion for partial summary judgment (the
"Motion").  Shortly thereafter, Plaintiff filed his response in opposition to the Motion and
the parties stipulated to having the Motion resolved on the papers in lieu of having oral

---

[1]  The Court takes judicial notice of the dockets from Debtor's case and of their
contents. Fed.R.Evid. 201; *see Maritime Electric Co., Inc. v. United Jersey Bank*, 959
F.2d 1194, 1200 n. 3 (3d Cir.1991).

[2]  In Count III, Plaintiff also alleged that Debtor should be denied a discharge
under 11 U.S.C. §727(a)(2)(A) but has since conceded that he cannot prevail on a claim
under this subsection. *See Plaintiff's Response to Defendant's Motion for Partial
Summary Judgment ("Plaintiff's Response") at ¶3.*

2

argument. To this end, they subsequently filed briefs in support of their positions on

the Motion. The depositions, affidavits and answer to interrogatories which the parties

filed in support of or in opposition to the Motion focus primarily on the facts pertaining

to the Ship Bottom Property.

## *Factual History*

Plaintiff and Debtor are brothers. Over the years, the parties have developed

real estate together. *Complaint ¶ 7; Answer ¶7.* For some period of time, the brothers

conducted their real estate operations through a company named Bucks County

Modular Homes. *See Plaintiff's Answer to Defendant's Interrogatories, which are*

*attached as an exhibit to the Motion, at ¶2.*

### *Creek Road Property*

On or about August 27, 1996, Plaintiff entered into an agreement ("Agreement")

for the purchase of two properties located on Creek Road known as tax parcel 21-34-

202 and 21-34-203 in Lower Hampton, Pennsylvania. *Complaint ¶8; Answer ¶ 8.*

Pursuant to the terms of the Agreement, Plaintiff subdivided the two properties into

three lots. *Complaint ¶9; Answer ¶9.* Plaintiff subsequently obtained title to Lot 2 by

deed and was granted a right of first refusal to purchase Lot 3 per a written agreement.

*Complaint ¶10 ; Answer ¶10.* The source of funds which Plaintiff used to make these

purchases (of Lot 2 and the right of first refusal of Lot 3) is unclear. In Plaintiff's

Answers to Defendant's Interrogatories, Plaintiff states that the funds to purchase Lot 2

and the right of first refusal on Lot 3 came from him or Bucks County Modular Homes.

*See Plaintiff's Answer to Defendant's Interrogatories ¶2.*

On or about November 18, 1999, Plaintiff executed a second right of first refusal

for "Lot 3" in his name and Debtor's name. *Complaint ¶11; Answer ¶11.* According to

Plaintiff, he did so with the understanding and representation of Debtor that the

purpose of the second right of first refusal was to give Debtor the right to acquire "Lot

3" if, but only if, Plaintiff elected not to do so and that, in all other respects, the right of

first refusal was solely Plaintiff's right. *Complaint ¶11.* Debtor denies having made

such a representation to the Plaintiff. *Answer ¶11.*

On or about October 4, 2001, Debtor executed an assignment of Plaintiff's right

of first refusal for "Lot 3" granting Debtor the sole and exclusive right of first refusal.

*Complaint ¶13; Answer ¶13. See also the Assignment of Interest in Agreement of the*

*Right of First Refusal, dated October 4, 2001, which is attached as Exhibit E to*

*Plaintiff's Response to Defendant's Motion for Partial Summary Judgment.* Plaintiff

contends that Debtor fraudulently forged his name on this assignment and that the

forgery was done without Plaintiff's knowledge, authority or consent. *Complaint ¶¶ 13*

*& 14.* Debtor denies that he signed Plaintiff's signature without his consent and

authorization. *Debtor's 2008 Dep. at 12.*

Debtor subsequently assigned the right of first refusal to a third person by the

name of Anthony Michael Martino ("Martino") who exercised the right and acquired title

to "Lot 3." *Complaint ¶15; Answer ¶15.* Martino granted Debtor a mortgage lien on

"Lot 3" in the amount of $37,000. *Complaint ¶15; Answer ¶15; Debtor's Schedule B.*

Plaintiff contends that the right of first refusal was assigned to Martino as a straw party

to exercise the right and purchase the lot. *Complaint ¶ 15.* Debtor denies that Martino

4

was a straw party, alleging that he was an active participant in the parties' business

and "was entitled to the benefits conferred by virtue of his activity and contribution."

*Answer ¶15.*

### *Playwicki Property*

Plaintiff contends that Debtor wrongfully obtained sole title to real estate on

Playwicki Street in Hulmeville, Pennsylvania and that the title to the property (the

"Playwicki Property") should have been put in the names of both Plaintiff and Debtor

because the funds that were used to purchase the property were joint funds of Plaintiff

and Debtor. *Complaint ¶¶19-20; See Plaintiff's Answer to Defendant's Interrogatories*

*at ¶3.*[3]

Debtor thereafter assigned rights in or transferred the Playwicki Property to Bob

Manzo, who is a realtor with whom Debtor "worked closely." *Complaint ¶21; Answer*

*¶21.* Plaintiff contends that the transfer was made in "return for [the] forgiveness of

[a] $35,000 loan" which Manzo made to the Debtor. *Complaint ¶25.* Debtor denies

that allegation and asserts that the transfer was made for consideration which he

"believes was $50,000." *Answer ¶25.* After the transfer, Manzo developed the property

with Debtor working as a "consultant" for which Debtor was paid approximately

$35,000. *Complaint ¶22.* Plaintiff filed a lis pendens and litigation regarding the

Playwicki Property. *Complaint ¶24; Answer ¶24.* The $35,000 which Debtor was paid is

---

[3] In Plaintiff's Answers to Defendant's Interrogatories, Plaintiff states that "[t]he
funds [to purchase the Playwicki Property] were joint funds whether they came from
the Corporation, the fictitious name, or the individual parties directly." *See Plaintiff's
Answers to Defendant's Interrogatories ¶3.*

being held in an escrow account pending the outcome of the aforementioned litigation.
*Id.* Debtor denies that he held title to the property in his own right but, instead, says
that he obtained the property to further the purposes of the real estate development
company owned by him and his brother. *Answer ¶¶ 19-20.*

### Ship Bottom Property

In March of 1999, real estate located at 2615 Central Avenue in Ship Bottom,
New Jersey was purchased with the following money: (i) $105,000 from Martino and
Richard Monach; (ii) $30,000 from John Hatch who is a brother of Debtor and Plaintiff;
(iii) $34,135 or $60,000 from Debtor or Bucks County Modular Homes; and (iv)
approximately $546 from Brenda and John Hatch (paid by a check at the closing). *See
Deposition of Debtor from August 29, 2005 ("Debtor's 2005 Dep."), attached as Exhibit
A to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment at 47-49;
Deposition of Debtor from November 13, 2008 ("Debtor's 2008 Dep."), attached as
Exhibit B to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment at
43; Deposition of Brenda Hatch, dated November 13, 2008 ("Brenda Hatch Dep."),
attached as Exhibit C to Motion, at 8.* The $34,135 or $60,000 which was paid by the
Debtor or Bucks County Modular Homes was obtained by Debtor through a line of
credit on his home and was loaned or otherwise given to the company to fund the
purchase of the Ship Bottom property.[4]  *Debtor's 2005 Dep. at 47-49; Debtor's 2008*

---

[4] In his 2005 deposition, Debtor testified that he contributed $60,000 toward
the purchase of the Ship Bottom Property and that he obtained the $60,000 from a line
of credit on his home. *Debtor 2005 Dep. at 49.* However, at Debtor's 2008 deposition,
                                                                              (continued...)

*Dep. at 43.* According to the Debtor, Plaintiff was supposed to repay the Debtor for
one-half of the funds ($30,000), but Plaintiff never did. *Debtor's 2005 Dep. at 50.* As a
result, Debtor maintains that Plaintiff has no interest in the property. *Id. at 48-49.*

Title to the Ship Bottom Property is and has always been in the names of
Martino and Brenda Hatch who is John Hatch's wife. *See Debtor's 2005 Dep. at 49 .*
However, the understanding at the time the property was purchased was that: (i) one-
third of the property would be owned by collectively by the Hatch family members who
contributed to the purchase thereof; and (ii) two-thirds of the property would be owned
by Martino and Monarch. *Brenda Hatch Dep. at 7; Debtor's 2005 Dep. at 48; Debtor's
2008 Dep. at 43.*

The Ship Bottom Property has two homes on it. *Debtor 2005 Dep. at 52; Debtor
2008 Dep. at 25.* One is a duplex which is considered to be the property of Martino
and Monarch (for their 2/3 ownership of the Ship Bottom Property). *Id. at 26; Debtor
2005 Dep. at 52.* The other is a small two-person cottage of 342 square foot which is
considered to be the property of the Hatches (for the 1/3 ownership of the Ship Bottom

---

⁴(...continued)

he clarified or changed his testimony, stating that the money that was contributed
towards the Ship Bottom Property on behalf of himself and Plaintiff was from their
company's account (Bucks County Modular Homes) and was not paid directly by him.
*Debtor 2008 Dep. at 24.* As Debtor explained in more detail at his deposition in 2008,
he:(i) borrowed the money which he contributed to the purchase of the Ship Bottom
Property from a line of credit (secured by his home) from William Penn Savings and
Loan; (ii) put the money into their company's account (Bucks County Modular Homes);
(iii) wrote a check for $34,135 payable to "Cash" on the company's account; and (iv)
cashed the check and obtained a certified check from the bank to contribute towards
the purchase of the Ship Bottom Property on behalf of himself and Plaintiff. *Id. at 24-
27.*

Property). *Debtor 2008 Dep. at 52.* Plaintiff and Debtor worked on renovating the Ship

Bottom Property. *Debtor's 2005 Dep. at 50-51.* According to the Debtor, they hired

numerous subcontractors to do the work. *Id.*

Since the purchase of the Ship Bottom Property in 1999, Brenda and John Hatch

have paid for the "Hatch" portion of the taxes on the property and have paid all of the

utilities, etc., with regard to the two-person cottage. *Brenda Hatch Dep. at 19-20;*

*Affidavit of Glenn Hatch in Support of Defendant's Motion for Partial Summary*

*Judgment ("Debtor Affidavit") at ¶4; Debtor 2008 Dep. at 31.* Neither Plaintiff nor

Debtor have paid for any of the taxes or any of the other day-to-day costs associated

with the property.[5] *Id.* ; *Brenda Hatch Dep. at 19-20.* For this reason, according to

Debtor, his brother John and John's wife, Brenda, Debtor does not own an interest in

the Ship Bottom Property. *John Hatch Deposition, dated January 23, 2009 ("John*

*Hatch Dep."), at 23-24;* Brenda Hatch Dep. at 18. However, John Hatch testified that,

in the event the Ship Bottom Property was sold, the individuals who contributed to the

purchase price of the property would "probably" get back what they had put into it.

*John Hatch Dep. at. 23.* Moreover, at Debtor's 2005 deposition, he testified that he

and his brother (presumably John) intended to keep the Ship Bottom Property for their

"personal use." *Debtor 2005 Dep. at 51-52.*

According to the Debtor and his counsel, Debtor decided not list the Ship Bottom

---

[5] According to Plaintiff's Answers to Defendant's Interrogatories, Plaintiff and his
wife attempted to pay $5,000 to John and Brenda Hatch in 2005 toward real estate
taxes for the Ship Bottom Property but that they did not accept the check. *See
Plaintiff's Answer to Defendant's Interrogatories at ¶4(4) .*

8

Property or any ownership interest therein on his Bankruptcy Schedules based on his counsel's advice but, rather, to wait until the 341 meeting of creditors to disclose the details concerning the purchase and ownership of property. *Affidavit of Matthew R. Nahrgang, Esquire, in Support of Defendant's Motion for Partial Summary Judgment ("Nahrgung Affidavit"), attached to the Motion as Exhibit D; Debtor Affidavit ¶¶5-6.* What Debtor told his counsel regarding the Ship Bottom Property before he was advised not to list any ownership therein on his Schedules is not contained in the record.

## Discussion

### I. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).[6]  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine issue exists when the trier of fact "could return a verdict for the nonmoving party." *Cooley v. Merski*, 2009 WL 742692, at * 2 (W.D. Pa. March 20, 2009) (*citing Anderson v. Liberty*

---

[6] Rule 56 of the Federal Rules of Civil Procedure is applicable hereto pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure.

9

*Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In deciding a motion for summary judgment, it is not the court's role to weigh

the disputed evidence and decide which is more probative, or to make credibility

determinations. *Benchmark Group, Inc. v. Penn Tank Lines, Inc.,* 612 F. Supp.2d 562,

573 (E.D. Pa. April 8, 2009) *(citing Boyle v. County of Allegheny, Pa.,* 139 F.3d 386,

393 (3d Cir.1998) (*citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co. Inc.,* 998

F.2d 1224, 1230 (3d Cir.1993)). Rather, the court must consider the evidence, and all

reasonable inferences which may be drawn from it, in the light most favorable to the

non-moving party. *Benchmark Group, Inc.,* 612 F. Supp.2d at 573 (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*citing U.S. v. Diebold,*

*Inc.,* 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361*

*(3d Cir.1987)).* If a conflict arises between the evidence presented by both sides, the

court must accept as true the allegations of the non-moving party and draw all

justifiable inferences in his favor. *Benchmark Group, Inc.,* 612 F. Supp.2d at 573 (*citing*

*Anderson,* 477 U.S. at 255).

The moving party bears the initial responsibility of informing the court of the

basis for its motion and identifying those portions of "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,"

which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*

*Corporation v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party meets its

burden, then "the nonmoving party must set forth 'specific facts showing that there is a

genuine issue for trial' or the factual record will be taken as presented by the moving

10

party and judgment will be entered as a matter of law." *Zahavi v. The PNC Financial
Services Group, Inc.*. 2009 WL 904699, at \*6 (W.D. Pa., March 31, 2009*) (quoting
Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting*
Fed.R.Civ.P. 56(e))).

## II.  Count I - §523(a)(2)(A)

A debt may be excepted from discharge under §523(a)(2)(A) if it was "for
money, property, services, or an extension, renewal, or refinancing of credit, to the
extent it was obtained by . . . false pretenses, a false representation or actual fraud[.]"
11 U.S.C. §523(a)(2)(A).  The elements of a claim under §523(a)(2)(A) for false or
fraudulent representations are the following: (1) the debtor made a representation
knowing at the time that it was false; (2) the debtor made the representation with the
intent and purpose of deceiving the plaintiff; (3) the plaintiff justifiably relied on the
debtor's false representation; and (4) the plaintiff suffered a loss or damage as a
proximate consequence of the representation having been made. *Stevens v. Antonious
(In re Antonious)*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006).

In the Complaint, Plaintiff alleges that he executed the second right of refusal on
the Creek Road Property based on the representation of the Debtor that its "purpose
was to give [the Debtor] the right to acquire Lot 3 if, and only if, [Plaintiff] elected not
to do so, and that in all other respects, the right of first refusal was solely the right of
the [Plaintiff]."  Complaint ¶ 11.  In his answer to the Complaint, Debtor generally
denies that the purpose of the second right of first refusal was to be "construed in any
way other than what is suggested by its plain language," however, Debtor offers no

11

evidence in support of his denial in the instant Motion. Consequently, Debtor has not

carried his burden of demonstrating the absence of a genuine issue of material fact as

to Plaintiff's claim under §523(a)(2)(A), and the Motion in this respect will be denied.

## II. Count I – §523(a)(4)

Under §523(a)(4), a debt will be excepted from discharge if it is for: (i) fraud or

defalcation while acting in a fiduciary capacity; (ii) embezzlement while acting in any

capacity; or (iii) larceny while acting in any capacity. *See* 11 U.S.C. §523(a)(4); *see*

*also Ginsburg ex rel. The Vertical Group, Inc. v. Birenbaum,* 2009 WL 304045, at *9

n.23 (W.D. Pa. Feb. 9, 2009) (observing that the phrase "while acting in a fiduciary

capacity" in §523(a)(4) "modifies only the 'fraud or defalcation' exception and not the

'embezzlement or larceny' exception."). In his complaint, Plaintiff asserts, in conclusory

fashion, that "Debtor's actions as described herein constitute fraud or defalcation while

acting in a fiduciary capacity, embezzlement, or larceny." Complaint ¶36. The Court

shall examine each prong of §523(a)(4).

### *Fraud or Defalcation while acting in a Fiduciary Capacity*

Debtor contends that he is entitled to summary judgment on the claim that he

committed fraud or defalcation while acting in a fiduciary capacity because the facts, as

alleged in the Complaint, do not support such a cause of action. *See Motion* ¶9. In

response, Plaintiff argues that summary judgment cannot be granted because there is

evidence in the record that Debtor committed fraud or defalcation while acting in a

fiduciary capacity by taking assets of the corporation in which they both had a

ownership interest and converting them "to his own use." *See Response to Motion*

12

¶¶9-10.

The Court agrees with Plaintiff that there is evidence in the record (albeit disputed evidence) that Debtor converted assets of the brothers' corporation, namely the right of first refusal which was in both of their names for Lot 3 and the Playwicki Property, for his own use. However, even construing such evidence in the light most favorable to the Plaintiff, there is the legal issue of whether Debtor was acting in a fiduciary capacity when he allegedly converted the assets. Neither party has addressed this pivotal issue in their brief. The Court views the record before it as insufficiently developed on this key point. Accordingly, the Court will defer ruling on it and the Debtor shall not be granted summary judgment on this portion of Plaintiff's §523(a)(4) claim.

### *Embezzlement*

Embezzlement is the "'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" *Borchardt v. Ferrell (In re Ferrell)*, 2006 WL 1997423, at * 9 (Bankr. E.D. Pa. June 14, 2006) (*quoting Moore v. United States*, 160 U.S. 268, 269 (1895)). To prove a debtor committed embezzlement within the meaning of §523(a)(4), a plaintiff must establish that: (1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor appropriated for his own use; and (5) with fraudulent intent. *Ginsburg ex rel The Vertical Group, Inc. v. Birenbaum (In re Birenbaum)*, 2006 WL 1997478, at *8 (Bankr. W.D. Pa. July 7, 2006).

There is scant evidence in the record to support a claim of embezzlement.

13

According to the Plaintiff, Debtor deceived Plaintiff into transferring the right of first

refusal to the Creek Road Property from *him* to *Debtor and him* which means that

Debtor did not lawfully obtain the right of first refusal in both of their names.

Therefore, Debtor's alleged conversion of the right to first refusal to himself cannot

constitute embezzlement. Moreover, even assuming that Debtor used corporate funds

to purchase an interest in the Ship Bottom Property, Plaintiff has not alleged nor is

there evidence in the record that supports a finding that Debtor appropriated the funds

for his own use and with fraudulent intent. Rather, the undisputed evidence in the

record is that Debtor's original intent in contributing funds for the Ship Bottom Property

was to enable both him and Plaintiff to have an interest therein. Accordingly, the only

evidence in the record which could support a finding of embezzlement is that Debtor

used joint funds to purchase the Playwicki Property which he then had titled solely in

his name. This evidence, when viewed in the light most favorable to the Plaintiff, could

support a claim of embezzlement. Consequently, the Debtor is not entitled to summary

judgment on the embezzlement prong of §523(a)(4).

### *Larceny*

'Larceny "is the felonious taking of another's personal property with the intent to

convert it or deprive the owner of the same." *In re Schlessinger,* 208 Fed. Appx. 131,

133 (2006) (*citing* Collier on Bankruptcy ¶523.10 (15th ed.2006)). "'Larceny differs

from embezzlement only in the manner in which the property comes into the hands of

the person charged with fraudulently appropriating it.'" *Ginsburg, ex rel. The Vertical*

*Group, Inc. v. Birenbaum.* 2009 WL 304045, at *10 n.26 (W.D. Pa. Feb. 9, 2009)

14

*(quoting In re Steele,* 2005 WL 281154, at \*3 n.5 (E.D. Bankr. Jan. 28,. 2005)).

Larceny "occurs when 'the original taking of the property was unlawful.' " *In re
Kishbaugh,* 399 B.R. 419 (Bankr. M.D. Pa. 2009) *(quoting In re Schermer,* 388 B.R.
123, 128 (Bankr. E.D. Pa. 2008) (*quoting  Mosier v. Oxley (In re Oxley),* 2007 WL
2407266, \*6 & n. 24 (Bankr. Kan. August 20, 2007))).  While Debtor's actions vis-a-vis
the Playwicki Property and the Ship Bottom Property could not constitute larceny, his
alleged forging of Plaintiff's signature on the Assignment of Interest in Agreement of
the Right of First Refusal and unlawful taking of the right of first refusal, which are
disputed issues of fact, could.[7]  *See First Liberty Bank v. Allen (In re Allen),* 1999 WL
33588549, at \*2 (Bankr. S.D. Ga. Sept. 23, 1999) (concluding that Debtor committed
larceny when he forged a signature on his former client's check and deposited the
proceeds therefrom in his firm's bank account); *Hess v. Waterholter (In re
Waterholter),* 2006 WL 384986, at \*2-\*3 (Bankr. E.D. Va. Jan. 4, 2006) (concluding
that Debtor's conduct in forging signature on check and appropriating the proceeds
constituted both defalcation while acting in a fiducary capacity and larceny).  Therefore,

---

[7] In opposition to the Motion, Plaintiff submitted a letter, dated June 30, 2006,
from a certified public accountant named Patrick M. Smith, CPA.  In the letter, Smith
concludes that, if certain "adjustments" to Plaintiff's account for Bucks County Modular
Homes, Inc., were incorrect and "the reclassifying of checks out of Glenn Hatch's draw
account prove to be unsubstantiated, then it appears that Glenn Hatch withdrew
approximately \$150,000 more the [sic] his brother during the years 1992-2001."  In his
response to the Motion, Plaintiff refers to this letter to support his assertion that Debtor
"as a corporate officer used corporate funds as his own."  Plaintiff's Response ¶9.
Notably, the allegations of the Complaint focus on the Creek Road Property, the
Playwicki Property and the Ship Bottom Property and not on Debtor's transgressions, if
any, with regard to any wrongful taking of funds from the brothers' company.

15

Plaintiff is entitled to proceed on his claim that Debtor committed larceny under
§523(a)(4).

## II. Count II – §523(a)(2)((B)

A debt may be excepted from discharge under §523(a)(2)(B) if it was "for
money, property, services, or an extension, renewal, or refinancing of credit, to the
extent it was obtained by .... use of a statement in writing – (i) that is materially false;
(I) respecting the debtor's or an insider's financial condition; (iii) on which the creditor
to whom the debtor is liable for such money, property, services, or credit reasonably
relied; and (iv) that the debtor caused to be made or published with the intent to
deceive.]" 11 U.S.C. §523(a)(2)(B). In support of his motion, Debtor submitted his
affidavit wherein he states that he never "used a statement in writing regarding [his] or
an insider's financial condition to obtain any money, property or services from Plaintiff."
Debtor's Affidavit ¶14. Plaintiff offers no evidence to the contrary. Moreover, Plaintiff's
Complaint does not refer to a writing upon which a claim under §523(a)(2)(B) could be
based. Consequently, Debtor is entitled to summary judgment on Plaintiff's claim under
§523(a)(2)(B).

## IV. Count III - §727(a)

In Count III, Plaintiff contends that Debtor should be denied a discharge in his
bankruptcy case based on §§727(a)(4)(A) and 727(a)(5). *See Plaintiff's Brief at II.*
These subsections provide:

> (a) The court shall grant the debtor a discharge, unless –
>
> * * *

16

(4) the debtor knowingly and fraudulently, in or in
connection with the case--

(A) made a false oath or account;

\* \* \*

(5) the debtor has failed to explain satisfactorily,
before determination of denial of discharge under this
paragraph, any loss of assets or deficiency of assets to meet
the debtor's liabilities[.]

11 U.S.C. § 727(a)(4)(A) & (a)(5).

## False Oath or Account under
## Section 727(a)(4)(A)

Plaintiff claims that Debtor should be denied a discharge under §727(a)(4)(A)

because he failed to list his ownership interest in the Ship Bottom Property on his

Bankruptcy Schedules. As noted above, during a deposition in 2005, Debtor testified

that: (i) he contributed roughly $60,000 towards the "group" purchase of the Ship

Bottom Property on behalf of himself and his brother, Jeffrey;[8] (ii) Jeffrey never repaid

Debtor for his 50% share ($30,000) of the $60,000 which Debtor contributed towards

the purchase price so he assumed that Jeffrey "had no intention of being involved" in

it; and (iii) the intent was to keep the Ship Bottom Property for personal use and not to

sell it. *Debtor's 2005 Dep. at 47-53.* Based on this testimony from 2005, Plaintiff

contends that Debtor should be denied a discharge under §727(a)(4) for failing to list

the Ship Bottom Property on his Schedules.

---

[8] As noted above, the Ship Bottom Property was purchased by Martino and
Monarch as well as members of the Hatch family.

17

In support of his Motion, Debtor submitted an affidavit averring that he never personally owned any interest in the Ship Bottom Property because the money which he contributed thereto on behalf of himself and Jeffrey was paid by Bucks County Modular Homes and not by him. *Debtor Aff. ¶2.* In the affidavit, Debtor further avers that: (i) he possesses no ownership interest in the Ship Bottom Property because Brenda and John Hatch have paid all expenses pertaining to the property since its purchase and they assert complete ownership interest therein (Id. ¶4.); and (ii) he informed his bankruptcy counsel of the facts surrounding his claim of equitable ownership in the Ship Bottom Property and that his counsel advised him not to list any interest in the property on his Schedules but, instead, to disclose the facts surrounding the same at the 341 meeting of creditors (*Id. ¶5-7).*

A debtor's failure to list his assets on his bankruptcy Schedules can constitute a false oath for purposes of §727(a)(4). *The Cadle Company v. Zofko,* 380 B.R. 375, 382 (W.D. Pa. 2007). "Section 727(a)(4)(A) is designed to ensure that the debtor puts dependable information in the hands of those interested in the administration of the bankruptcy estate without the need for the trustee or a party in interest to engage in costly, exhaustive investigations to ferret out the truth concerning the Debtor's financial condition." *In re Giquinto,* 388 B.R. 152, 178 (Bankr. E.D. Pa.2008). To successfully challenge a debtor's discharge under §727(a)(4), a creditor must prove that: (1) the debtor made a false oath or statement, (2) the debtor knew the statement was false, (3) the debtor made the statement with the intent to deceive, and (4) the statement was material to the bankruptcy case. *The Cadle Company,* 380 B.R. at 382.

18

Based on the record currently before the Court, there are material factual
questions which remain unanswered regarding the Ship Bottom Property. For example,
did the Debtor contribute $60,000 or $34,135 to the purchase of the property? Was all
of the money funneled through the brothers' corporation or was some of it paid directly
by the Debtor? What did the Debtor disclose to his counsel about the Ship Bottom
Property in soliciting his advice on whether to list an interest or potential interest in it
on his Schedules? Debtor's affidavit does not address this point. Furthermore, while
Brenda and Jeffrey Hatch may take the position that no one from the Hatch family,
except themselves, possesses an interest in the Ship Bottom Property, their position on
the subject is irrelevant to whether Debtor indeed possesses such an interest. Since
the facts concerning the Ship Bottom Property have not been clearly set forth, Debtor's
request for summary judgment on Plaintiff's §727(a)(4) claim shall be denied.

## *Satisfactory Explanation of Loss*
## *of Asset Under Section 727(a)(5)*

Plaintiff's argument for nondischargeability under §727(a)(5) is that Debtor, who
admits that he once owned an interest in the Ship Bottom Property, has not
satisfactorily explained the loss of that interest. However, the record on summary
judgment proves otherwise.

The determination of what constitutes a "satisfactory" explanation for the loss of
assets under §727(a)(5) is within the Court's discretion. *In re Mezvinsky*, 265 B.R. 681,
689 (Bankr. E.D. Pa.2001). "In making this assessment, the court does not concern
itself with the propriety of the disposition of the assets, but only whether the

19

explanation is satisfactory." *In re Jacobs*, 381 B.R. 147, 168 (Bankr. E.D. Pa. 2008). *See also In re Mezvinsky,* 265 B.R. at 690 ("It is important to note that, for the purposes of a § 727(a)(5) inquiry, the court is not concerned with whether the disposition of the assets was proper under the Bankruptcy Code, but rather only whether the explanation satisfactorily describes what happened to the assets."). "Courts in this circuit have held that the explanation must convince the judge that the explanation is worthy of belief." *In re Jacobs*, 381 B.R. at 168. "The explanation must appear reasonable such that the court no longer wonders what happened to the assets." *In re Shepherd,* 2005 WL 4147868, at *3 (Bankr.D.Kan. Oct. 7, 2005) (citation omitted).

As noted above, the facts concerning the Ship Bottom Property have not been fully explained. However, even assuming that Debtor personally contributed $60,000 to the purchase of the Ship Bottom Property and that he no longer possesses any interest therein, Debtor has explained that his brother and sister-in-law have paid all expenses associated with such property since its purchase and that, while Debtor apparently is allowed to use the property, neither his brother, John Hatch, John's wife, Brenda, or the Debtor believe that he currently owns any interest in it. Debtor's explanation of this situation is corroborated by the deposition testimony of his brother, John, and his sister-in-law, Brenda. Plaintiff has submitted no evidence which undermines this explanation. Therefore, assuming that Debtor possessed an interest in the Ship Bottom Property that has been diminished or lost, he has provided a satisfactory explanation for the same and is, therefore, entitled to summary judgment on Plaintiff's §727(a)(5)

20

claim.

## V. Summary

For the reasons set forth above, Debtor's Motion shall be granted as to Plaintiff's

claims under 11 U.S.C. §§523(a)(2)(B) and 727(a)(5) but shall be denied in all other

respects.  An Order consistent with this Opinion shall be issued.


By the Court:


Stephen Raslavich
Chief U.S. Bankruptcy Judge


Dated: September 30, 2009